OPINION.
Defendant-appellant, Children's Hospital Medical Center, appeals from the judgment of the trial court overruling its objections to a magistrate's findings, in a bench trial. The magistrate found that plaintiff-appellee Diane Pitts is entitled to participate in the Workers' Compensation Fund for treatment of major depressive disorder and general anxiety disorder, both arising from her 1994 right rotator-cuff strain, an allowed work-related injury. We are called upon to determine if the magistrate's use of the term right rotator-cuff "injury," rather than "strain," was evidence of his improper consideration of Pitts's subsequent, non-work-related conditions which include surgeries for rotator-cuff retears. Because there was competent, credible evidence that Pitts's major depressive disorder and general anxiety disorder arose out of the right rotator-cuff "strain," suffered while she was employed at Children's Hospital, we affirm the judgment of the trial court.
On July 15, 1994, Pitts sustained an injury to her right shoulder in the course of and arising out of her employment with Children's Hospital. Her workers' compensation claim was allowed for right rotator-cuff strain. On July 21, 1994, Pitts was diagnosed with impingement of calcific tendonitis, which is a development of calcifications within a given tissue from overuse or chronic inflammation. An x-ray examination revealed that Pitts was also suffering from an acromial spur, which is an outgrowth of the bone.
On September 12, 1994, Dr. Angelo Colosimo, an orthopedic surgeon, performed exploratory surgery on Pitts's right shoulder and repaired a rotator-cuff tear, the acromial spur and calcific tendonitis. He testified that, after the surgery, Pitts felt better and that she regained full motion and excellent strength in her shoulder. For these reasons, he believed that she would be ready to return to work on January 1, 1995.
After returning to her regular job, Pitts began to experience increasing shoulder pain. On May 16, 1995, she returned to Dr. Colosimo, who diagnosed her condition as biceps tendonitis of the right shoulder. On June 30, 1995, Pitts underwent an arthroscopy on her right shoulder. It revealed a small retear of the rotator cuff. Dr. Colosimo testified that the retear was probably not the same as the one surgically repaired on September 12, 1994. Pitts was again able to return to her regular job. By April 26, 1996, her pain was gone and she worked without problems.
In September 1996, Pitts complained to Dr. Colosimo about pain in her neck, trapezius muscle, and right arm. Dr. Colosimo testified that these were new complaints separate from her earlier shoulder problem. She was referred to Dr. Anthony F. Guanciale. His diagnosis was right shoulder pain secondary to cervical-disc herniation and disogenic changes. In March 1997, Pitts underwent a two-level anterior discectomy and fusion. She returned to her former duties after this surgery.
On June 3, 1997, Pitts, complaining of right shoulder pain, returned to Dr. Colosimo. On September 3, 1997, Dr. Colosimo performed a third surgery to repair a retear of her right rotator cuff. After the surgery, Pitts complained of ongoing pain. She was put on light duty at Children's Hospital, but was later terminated because she was unable to perform her job.
Dr. Colosimo referred Pitts to a pain center. She was prescribed medication and was provided pain counseling. The pain center referred her to a clinical psychologist, Dr. George Parsons. His diagnosis was that Pitts suffered from a major depressive disorder and general anxiety.
Pitts filed an application to amend her claim with the Bureau of Workers' Compensation to seek compensation for depression and anxiety. The Industrial Commission granted her the right to participate in the Ohio Workers' Compensation Fund for the additional conditions of major depressive disorder and general anxiety disorder. Children's Hospital appealed the granting of Pitts's amended claim to the court of common pleas. In a bench trial, the magistrate found that Pitts's major depressive disorder and general anxiety were a direct and proximate result of her July 15, 1994, work-related injury, and that she was entitled to participate in the Workers' Compensation Fund for the additional conditions. In a memorandum decision, the trial court overruled Children's Hospital's objections to the magistrate's amended decision, which was accompanied by findings of fact and conclusions of law, and affirmed that decision.
An additional allowance for a mental condition is compensable as a residual or "flow through condition" only if it arises out of a compensable physical injury. See Grant v. Ohio Dept. of Liquor Control
(1993), 86 Ohio App.3d 76, 84-85, 619 N.E.2d 1165, 1171-1172. A "flow through condition" occurs when the claimant's work-related injury generates a medical condition in a body part other than that which the claimant originally specified. See Specht v. BP AM. Inc. (1999),86 Ohio St.3d 29, 30, 711 N.E.2d 225, 226.
 R.C. 4123.01(C)(1), amended in 1986, defines "injury" in the context of workers' compensation as follows:
 "Injury" includes any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment. "Injury" does not include:
 Psychiatric conditions except where the conditions have arisen from an injury or occupational disease.
 Children's Hospital's single assignment of error challenges the magistrate's assessment of the testimony of the experts and contends that the trial court's judgment was not supported by the manifest weight of the evidence. Specifically, Children's Hospital argues that the evidence did not support the magistrate's finding that Pitts's "major depressive disorder was a direct and proximate result" of her July 15, 1994, work-related right rotator-cuff "strain." The essence of its argument is that Pitts did not satisfy her burden of establishing that her major depressive disorder and general anxiety disorder arose out of her 1994 work-related right rotator-cuff strain, and not out of any one of her three subsequent, unrelated surgeries. It further contends that because a rotator-cuff "injury" may include conditions other than rotator-cuff strain, the trial court incorrectly concluded "there is no legal difference between a `sprain' and an `injury.'"
Children's Hospital focuses on the testimony of Dr. Parsons, who stated that Pitts's major depressive disorder was related to her failed 1997 surgery. Because the 1997 surgery was for a rotator-cuff tear, a condition that was not related to her 1994 allowed injury, Children's Hospital maintains that Pitts did not establish that her mental condition was compensable as a "flow through" condition.
The record, however, contains ample evidence to justify the magistrate's decision. Dr. Colosimo testified that Pitts's "shoulder problems were all a continuum" of her work-related injury suffered on July 15, 1994. Following surgery for her shoulder problems that were not work-related, she was able to return to work each time. Although Dr. Parsons testified that Pitts's major depressive disorder was "directly due to her failed 1997 surgery and her subsequent inability to return to her normal work activity," he also testified that in his opinion her major depressive disorder and general anxiety disorder were caused or aggravated by her shoulder injury of July 15, 1994. In response to Children's Hospital's assertion that Pitts's mental conditions were related to the surgeries for non-allowed conditions, Dr. Parsons gave this testimony:
 Where you put it forth as a fact. I think it's a hypothetical. To the extent that any additional trauma or reinjury or new injury may occur may be additive to the original injury, but it doesn't mean that it's subtractive. By that, the original major depression occurs after the initial injury, she may have additional injuries or additional medical impairments, these medical impairments induce additional trauma from a psychological standpoint. In other words, they're additive to the original depression, and until you can show me that they're specific and separate, I have no way of being able to tell you otherwise.
 The credibility of experts' conclusions and the relative weight expert opinion should enjoy are determinations left to the trier of fact. See State v. Nemeth (1998), 82 Ohio St.3d 202, 210, 694 N.E.2d 1332, 1338; see, also, Eve v. Johnson (Oct. 30, 1998), Hamilton App. No. C-970957, unreported. "An appellate court may not reverse a judgment of the trial court if it is supported by some competent, credible evidence going to all the essential elements of the case or defense." See Myers v. Garson (1993), 66 Ohio St.3d 610, 614 N.E.2d 742; see, also, C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus. The "weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus; see, also, Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273, 1276.
As the judgment of the trial court was supported by competent, credible evidence illicited from the expert witnesses, Children's Hospital's assignment of error is overruled.
Therefore, we affirm the judgment of the trial court.
Judgment affirmed.
Painter, P.J., and Hildebrandt, J., concur.